# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JACOB MCCHESNEY                                                              PLAINTIFF

v.                          Case No. 4:17-cv-00824-KGB

HOLTGER BROS., INC.                                                         DEFENDANT

## ORDER

Before the Court is plaintiff Jacob McChesney's motion for conditional certification of collective action, for disclosure of potential opt-in plaintiffs' contact information, and to send court-approved notice (Dkt. No. 11). Mr. McChesney brings claims against defendant Holtger Bros., Inc. ("Holtger") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201 *et seq*. Holtger initially filed a response in opposition to Mr. McChesney's motion for conditional certification (Dkt. No. 14). Holtger then filed a motion for leave to file supplemental response to plaintiff's motion for conditional certification and to hold motion for conditional certification in abeyance (Dkt. No. 16). The Court grants Holtger's motion for leave to file supplemental response (Dkt. No. 16). The Court, in ruling on the pending motions, considered the supplemental response Holtger filed (Dkt. No. 19). Also before the Court is Mr. McChesney's motion to approve equitable tolling (Dkt. No. 17), to which Holtger responded in opposition (Dkt. No. 20). For the reasons that follow, the Court grants, in part, and denies, in part, Mr. McChesney's motion for conditional certification of collective action, for disclosure of potential opt-in plaintiffs' contact information, and to send court-approved notice (Dkt. No. 11). The Court grants Mr. McChesney's motion for equitable tolling (Dkt. No. 17).

I. Background

Mr. McChesney is a former hourly paid employee of Holtger (Dkt. No. 1, ¶¶ 8, 18). Mr. McChesney alleges that Holtger operates a "yard" in Pulaski County out of which he was based during his employment with Holtger (*Id.*, ¶ 12). Holtger is a utility contractor licensed or performing work in Wisconsin, Michigan, Arkansas, Louisiana, Mississippi, Texas, Illinois, Iowa, Indiana, Florida, Massachusetts, Connecticut, Tennessee, Georgia, Arizona, Alabama, and New Mexico (Dkt. No. 19, at 2). Holtger maintains that Mr. McChesney worked for Holtger in Arkansas from August 2017 to July 2018, when he was terminated (*Id.*). Further, Holtger maintains that Mr. McChesney never worked for Holtger outside of Arkansas during his employment (*Id.*, at 11).

Mr. McChesney alleges claims under the FLSA and the AMWA. Specifically, Mr. McChesney contends that, between December 13, 2014, and December 13, 2017, Holtger failed to pay Mr. McChesney and other employees "their regular rate for all hours worked under 40 hours per week and overtime compensation in the amount of one and one-half times their regular rate of pay for all hours worked in excess of 40 in a week." (Dkt. No. 1, ¶¶ 21-23). Mr. McChesney seeks conditional class certification of a collective action for his FLSA claims for "[a]ll current and former hourly-paid field workers employed by Defendant Holtger Bros., Inc. at any time since December 13, 2014." (Dkt. No. 11, ¶ 2). Mr. McChesney has not moved for class certification on his AMWA claims.

II. Analysis

    A.    FLSA Conditional Certification

Under the FLSA:

An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or

more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action cases. At the notice stage, the Court must determine, based on the pleadings and affidavits, whether notice should be given to potential class members. The key issue is whether the members of the proposed class are similarly situated. If the Court allows notification, then a representative class is conditionally certified, and Mr. McChesney will send notice to the putative opt-in plaintiffs. At the second stage, the Court determines whether to decertify the class once discovery is largely complete. *Smith v. Frac Tech Services, Ltd.*, No. 4:09-cv-679, 2009 WL 4251017, at *2 (E.D. Ark. Nov. 24, 2009) (citation omitted). This Court has previously adopted this approach. *See Watson v. Surf–Frac Wellhead Equip. Co.*, No. 4:11-cv-843, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012); *Cruthis v. Vision's*, No. 4:12-cv-244, 2013 WL 4028523, at *1-2 (E.D. Ark. Aug. 7, 2013). Although it appears from Holtger's supplemental response that the parties have conducted some discovery, neither party contends that discovery conducted to date has been substantial in scope or that discovery is largely complete. As such, the Court determines it does not have sufficient information to skip the initial "notice" step of FLSA certification and determines that the more lenient standard is appropriate at this conditional certification stage. *See Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007).

"'To establish that conditional certification is appropriate, the plaintiff[] must provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa) (alteration in original) (quoting *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008)). Mr. McChesney's

3

burden at the notice stage is lenient and may be met by making a "modest factual showing," typically by the submission of affidavits, that he and the putative class were victims of a common decision, policy, or plan of the employer that affected all class members in a similar fashion. *Resendiz–Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1106-08 (10th Cir. 2001)). However, while this is a "lenient standard, . . . 'more than mere allegations' are required." *Tegtmeier*, 208 F. Supp. 3d at 1018 (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs." *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citation omitted). The Court can consider a variety of non-exclusive factors in determining whether employees are similarly situated. Such factors include: (1) whether the employees held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the employees were subjected to the same policies and practices and, if so, whether the policies and practices were established in the same manner and by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1090, 1097-99 (11th Cir. 1996)). "The Court does not need to determine whether class members are *actually* similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class." *Tinsley v. Covenant Care Servs., LLC*, No. 1:14-cv-00026-ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (emphasis in original) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1016-17 (E.D. Mo. 2010)).

4

To meet his burden, Mr. McChesney presents his sworn affidavit, in which he avers that

> [f]ield workers, such as myself, arrive at Defendant's yard in Pulaski County around 6:30 in the morning, where we load up any items such as tools or materials we will need to perform our work on the work site each day. From the yard, we travel together in crews to the work sites in vehicles owned by Defendant. Defendant does not record the start of our work day until we arrive at the work site.

(Dkt. No. 11-7, ¶¶ 9-10). Mr. McChesney also avers that, at the end of his work day, Holtger "requires me to return with the crew to Defendant's yard and perform job-related tasks such as unloading the vehicle at the yard, Defendant records the end of my work day as the time that I left the work site. This is true for all other field workers as well." (*Id.*, ¶ 14). According to Mr. McChesney, Holtger "only pays me for the time when I arrive at the job site at the beginning of the day until I leave the job site at the end of the day." (*Id.*, ¶ 15). Furthermore, per Mr. McChesney, "[t]his is true for all other field workers for Defendant as well." (*Id.*).

Holtger contends that conditional certification is inappropriate for multiple reasons. First, Holtger argues that Mr. McChesney has failed to meet his burden of showing that he is similarly situated to the proposed class because Holtger has a "Travel Policy" that renders Mr. McChesney dissimilar from the potential opt-in plaintiffs (Dkt. No. 14, at 3). The Travel Policy describes four situations where an employee would be compensated for his or her travel time:

1) If a larger truck and/or trailer with equipment is being transported to or from a job site requiring a driver to have a Commercial Drivers License to operate the vehicle, then the driver shall be compensated for drive time.

2) If the crew is changing job sites during the work day, the entire crew is paid for the time to move from one job-site to the next.

3) When a crew travels from our main shop or another designated storage area with all of their equipment and supplies to a new job site, the entire crew is paid for travel time <u>for the move in</u>.

4) When a crew completes a job and travels from the job site with all of their equipment to our shop or another designated storage area, the travel time is paid <u>for the move out</u>.

5

(Dkt. No. 14-1 (underline in original)). Thus, Holtger argues that the proposed class "is overly broad because some employees—those with CDLs—were paid for driving while other hourly employees, (those who chose to commute in a company vehicle), were not." (Dkt. No. 14, at 5). In support, in its' supplemental response, Holtger presents deposition testimony from Mr. McChesney and argues that his testimony establishes that "there was no pattern or practice of failing to pay for work performed in the yard." (Dkt. No. 19, at 6-7). Holtger also argues that Mr. McChesney is not similarly situated to the proposed class because he regularly arrived at work late and left early, unlike the other members of the proposed class (*Id.*, at 5).

In its supplemental response, Holtger makes several additional arguments opposing conditional certification based upon Mr. McChesney's deposition testimony and argues that Mr. McChesney's allegations are insufficient to establish a pattern or practice suitable for collective action. First, Holtger points out that Mr. McChesney testified that his supervisor intentionally failed to record certain hours worked, and Holtger argues that this claim is not appropriate for class resolution. Holtger notes that this claim is not pleaded in Mr. McChesney's complaint (Dkt. No. 19, at 7). Second, Holtger argues that Mr. McChesney testified that "he should have been paid for travel to or from the yard when he did no work in the yard on either side of that commute" and that this claim is not appropriate for class resolution (*Id.*, at 9). Finally, Holtger argues that Mr. McChesney's proposed class is overly broad and should, at most, be limited by job function and geographic scope (*Id.*, at 12). Holtger suggests that, if the Court conditionally certifies a class over its objection, that class be limited to the crew run by Mr. McChesney's supervisor or, at most, to Arkansas, as Mr. McChesney admittedly has no knowledge of how Holtger operates in other states (*Id.*, at 11-12).

The Court finds that Mr. McChesney has carried his lenient burden of establishing at this stage of the litigation that he is similarly situated to other field workers in Arkansas who have been employed by Holtger. Mr. McChesney's affidavit demonstrates that, at the beginning of the work day, he and other field workers in Arkansas arrive at Holtger's yard in Pulaski County, Arkansas, to load up tools and other materials necessary for the day's work (Dkt. No. 11-7, ¶ 9). His affidavit also avers that he and other field workers "travel together in crews to the work sites in vehicles" from the yard (*Id.*, ¶ 10). Mr. McChesney's affidavit asserts that Holtger "only pays me for the time when I arrive at a job site at the beginning of the day until I leave the job site at the end of the day" but not for "the time I spend at [Holtger's] yard in the morning prior to leaving for the job site, driving to the job site, or the time that I spend driving from the job site back to [Holtger]'s yard and unloading the truck and trailer at the end of the work day." (*Id.*, ¶ 15). Mr. McChesney asserts that these statements are "true for all other field workers" who work for Holtger (*Id.*).

The Court recognizes that, as Holtger points out, Mr. McChesney's personal knowledge is limited to his experience in Arkansas (Dkt. No. 19, at 11-12). There is no factual information in the record before the Court that disputes this. As for Holtger's objection that the scope of the proposed class should be limited to Arkansas, based on the record before the Court, the Court agrees at this stage of the litigation that such a limitation is appropriate.

The Court concludes that Mr. McChesney's affidavit offers evidence sufficient to show that all members of the proposed class limited to Arkansas were subjected to a common policy or plan: Holtger's alleged policy or practice against compensating employees for their work at the yard and travel time between the yard and job sites. Such policies have been found sufficient for conditional certification, even where the individual class members' claims varied somewhat. *See Frank v. Gold'n Plump Poultry, Inc.*, No. 04-cv-1018 (PJS/RLE), 2005 WL 2240336, at *3 (D.

Minn. Sept. 14, 2005) (finding that employer's alleged policy of not requiring its employees to be paid for donning and doffing was sufficient for conditional certification, even though it was possible that some employees were subjected to different practices by various supervisors). Although Holtger presents deposition testimony from Mr. McChesney that it contends undercuts statements in his affidavit, having carefully reviewed the record evidence presented to the Court, the Court declines to make such a determination at this stage of the litigation (Dkt. No. 19-1, at 4, lines 10-21 (explaining that, under at least two supervisors, it was "understood [workers] would go to the yard" every morning); at page 6, line 13 to page 8, line 2 (explaining how some equipment was transported to the work site without a CDL driver)).

Holtger's assertion that its CDL drivers receive payment when they drive from the yard to work sites is essentially an assertion that not *all* of its employees are subjected to this policy at *all* times. At the "notice" stage of conditional certification, however, Mr. McChesney need not show that all members of the conditionally certified class are identically situated. *See In re Pilgrim's Pride Fair Labor Standards Act Litig.*, MDL Docket No. 1:07-cv-1832, 2008 WL 4877239, at *3 (W.D. Ark. Mar. 13, 2008). The parties may develop evidence regarding CDL drivers and compensation to present to the Court at the second stage.

As for Holtger's arguments that Mr. McChesney was frequently late for work and that Mr. McChesney's supervisor may have inappropriately reduced Mr. McChesney's hours, the Court need not, at this time, consider the evidence submitted by Holtger. "Courts are not to resolve contradictory evidence presented by the parties or make any credibility determinations at this [notice] stage." *Jeffrey Olsen v. Clay Cty., Arkansas*, Case No. 3:18-cv-00129 BSM, 2018 WL 6004660, at *2 (E.D. Ark. Nov. 15, 2018) (citing *In re Pilgrim's Pride*, 2008 WL 4877239, at *3). Many of Holtger's exhibits and the deposition testimony it presents appear to refute Mr.

8

McChesney's affidavit, prematurely inviting the Court to resolve contradictory evidence. Furthermore, by arguing that its Travel Policy allows it to deny Mr. McChesney compensation for traveling between the yard and job sites, Holtger is essentially asking the Court to resolve the essential merits issue at the heart of this litigation: whether the FLSA requires Holtger to compensate Mr. McChesney for his travel time between the yard and the job sites.

Neither party proposed precise language to account for the Court's determination regarding the Arkansas limitation, so the Court proposes the following language:

> All current and former hourly-paid field workers employed by Defendant Holtger Bros., Inc. at any time since December 13, 2014, and who performed work for Defendant Holtger Bros., Inc. within Arkansas.

The parties have ten days from the entry of this Order to inform the Court in writing whether this proposed language is acceptable, in the light of the Court's other rulings in this matter, or to propose alternate language for consideration that accounts for the Court's rulings. The Court recognizes the parties' objections to conditional certification previously asserted and to class limitations and will *not* deem the parties to have waived these objections when responding to the Court's proposed language.

As the Court finds that Mr. McChesney has carried his lenient burden of establishing that he is similarly situated to other field workers employed by Holtger in Arkansas, the Court conditionally certifies this action under the FLSA for purposes of giving notice.

### B. Equitable Tolling

Mr. McChesney asks the Court to toll the statute of limitations for all opt-in plaintiffs for the length of time between May 22, 2018—the date of the conclusion of briefing on his motion for conditional certification of collective action, for disclosure of potential opt-in plaintiffs' contact

information, and to send court-approved notice concluded—and the date an Order is entered on that motion (Dkt. No. 17, ¶ 7).

The statute of limitations for a plaintiff in a collective action under the FLSA is typically measured from the date the plaintiff filed his or her written consent to join the action. *See* 29 U.S.C. § 256. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The doctrine of equitable tolling does not apply to 'garden variety' claims of excusable neglect, and should be invoked only in exceptional circumstances truly beyond the plaintiff's control." *Jenkins v. Mabus*, 646 F.3d 1023, 1028-29 (8th Cir. 2011) (citations omitted). Mr. McChesney argues that "[i]t would . . . be inequitable to allow the statute of limitations to run against opt-in Plaintiffs during the pendency of Plaintiff's [motion for conditional class certification] . . . ." (Dkt. No. 17, ¶ 5). The purpose of equitable tolling in such cases is to prevent potential opt-in plaintiffs from losing their rights simply because the Court has a full docket. *See Taylor, et al. v. Cullen, et al.*, No. 4:11-cv-269-DPM (E.D. Ark. Aug. 22, 2013) (tolling the statute of limitations for 17 months to account for the fact that "[t]he Court [was] delayed in addressing summary judgment and notice by other pressing matters.").

Holtger argues that the equitable tolling requested by Mr. McChesney is inappropriate because all of the potential opt-in plaintiffs "had all the information they needed to determine if they were paid for all hours worked," and therefore Mr. McChesney "has not demonstrated that 'despite all due diligence[,]' a putative plaintiff would be 'unable to obtain vital information bearing on the existence of his claim.'" (Dkt. No. 20, at 3 (citing *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 836 (8th Cir. 2002)). Specifically, Holtger argues that "[a] reasonable person

in Plaintiff's (or in any putative plaintiff's) position would have been aware of any possible violation based on the hours they worked, the timesheets that were submitted for each job, and the employee's pay." (*Id*., at 2). Holtger supports his argument by pointing to Mr. McChesney's testimony that "'everyone' called human resources to complain about alleged shortages to their paychecks." (*Id*., at 2).

The Court is unpersuaded by Holtger's arguments. Rather, the Court finds that the delay between the issuance of this Order and the finalization of the briefing on Mr. McChesney's motion for conditional class certification, which occurred through no fault of Mr. McChesney or the potential opt-in plaintiffs, is an extraordinary circumstance that should not cause the potential opt-in plaintiffs to lose out on the potential benefits of this lawsuit. *Clendenen v. Steak N Shake Operations, Inc.*, Case No. 4:17-cv-01506-JAR, 2018 WL 4679728, at *4 (E.D. Mo. Sept. 18, 2018) ("[O]ther districts in the Eight[h] Circuit commonly grant equitable tolling for the time it takes the court to rule on a conditional certification motion."); *Trogdon v. Kleenco Maint. & Const., Inc*, No. 5:14-cv-05057, 2015 WL 2345590, at *4 (W.D. Ark. May 15, 2015); *see Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013). The Court's delay in ruling on the pending motion for conditional class certification due to other pressing matters on the Court's docket is an extraordinary circumstance for which justice supports the application of equitable tolling.

The Court grants Mr. McChesney's motion for equitable tolling and directs that the running of the applicable statute of limitations be tolled from May 22, 2018, until the date this Order is entered on the docket (Dkt. No. 17).

### C. Notice

Mr. McChesney's motion, as it pertains to notice to potential opt-in plaintiffs, is granted, in part, and denied, in part. Mr. McChesney requests that the Court ratify the following notice process: first, Mr. McChesney would send notice and consent forms (Dkt. Nos. 11-1, 11-2) *via* U.S. Mail to the potential opt-in plaintiffs, and the Court should set a 90-day opt-in period running from the date when Holtger releases the potential opt-in plaintiffs' contact information to Mr. McChesney; second, Mr. McChesney would send a follow-up postcard *via* U.S. Mail (Dkt. No. 11-3) to potential opt-in plaintiffs who do not respond within 30 days after the notice and consent forms are originally sent. Furthermore, Mr. McChesney requests permission to further contact the potential opt-in plaintiffs *via* text message containing a hyperlink to the notice and consent forms, as well as a text with follow-up information if the potential opt-in plaintiffs do not respond to the initial contact within 30 days. Alternatively, Mr. McChesney requests permission to send two emails to the potential opt-in plaintiffs: one with a link to the notice and another from a third-party website, www.Rightsignature.com, containing a final version of the electronic consent form (Dkt. No. 12, at 20-21).

The Court grants Mr. McChesney's motion to the extent he seeks to provide potential opt-in plaintiffs with notice *via* U.S. Mail. Accordingly, Mr. McChesney may send one written notice and consent form to the potential opt-in plaintiffs, as well as one follow-up written notice, all *via* U.S. Mail. Mr. McChesney's proposed written notice, consent, and follow-up forms are acceptable (Dkt. Nos. 11-1, 11-2, 11-3). Furthermore, the Court grants Mr. McChesney's motion to the extent he seeks permission to send potential opt-in plaintiffs one email with notice of the action and another from www.Rightsignature.com with an electronic consent form. The proposed emails are acceptable to the Court (Dkt. No. 11-4). The Court denies without prejudice Mr. McChesney's

request to send notice, consent, and follow-up information to the potential opt-in plaintiffs *via* text message.

To facilitate notice, Holtger is ordered to provide to Mr. McChesney's counsel the names, last known home and work addresses, and all known email addresses for the potential opt-in plaintiffs within 21 days of the date of this Order.[1] The Court also directs Holtger to provide such information to Mr. McChesney's counsel *via* Microsoft Word or Excel formatting. Mr. McChesney shall then have 90 days to distribute notice and file opt-in consent forms with the Court.

### III. Conclusion

For the reasons discussed above, the Court grants, in part, and denies, in part, Mr. McChesney's motion for conditional certification of collective action, for disclosure of potential opt-in plaintiffs' contact information, and to send Court-approved notice (Dkt. No. 11). The Court conditionally certifies this case as a collective action and proposes the following language as the class of individuals to receive notice:

> All current and former hourly-paid field workers employed by Defendant Holtger Bros., Inc. at any time since December 13, 2014, and who performed work for Defendant Holtger Bros., Inc. within Arkansas.

The parties have ten days from the entry of this Order to inform the Court in writing whether this proposed language is acceptable, in the light of the Court's other rulings in this matter, or to propose alternate language for consideration that accounts for the Court's rulings. The Court also grants Mr. McChesney's motion for equitable tolling (Dkt. No. 17). To facilitate notice, Holtger

---

[1] To the extent the Court modifies the definition of the class of individuals to receive notice after the entry of this Order based on arguments made by the parties and Holtger believes additional time is necessary to gather and provide such information, Holtger may make a request to the Court for additional time.

is ordered to provide to Mr. McChesney's counsel the names, last known home and work addresses, and all known email addresses for the potential opt-in plaintiffs within 21 days of the date of this Order. Mr. McChesney shall have 90 days from the date Holtger provides this information to distribute notice to the potential opt-in plaintiffs and file copies of the consent forms with the Court. Mr. McChesney may provide notice to the class of individuals consistent with the terms of this Order.

It is so ordered, this the 7th day of January, 2019.

_____
Kristine G. Baker
United States District Judge